**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| MARIA MALDONADO, | : | Case No. 3:12-cv-205 |
| Plaintiff, | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Michael J.  Newman |
| vs. | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | | |
| | : | |
| Defendant. | | |

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY
FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND
REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER
THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT
WITH THIS OPINION; AND (3) THE CASE BE CLOSED**

---

This is a Social Security disability benefits appeal.  At issue is whether the
Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore
unentitled to Disability Insurance Benefits ("DIB").  This case is before the Court upon
Plaintiff's Statement of Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc.
12), Plaintiff's Reply (doc. 13), the administrative record (doc. 6)[2], and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff filed applications for DIB and Supplemental Security Income ("SSI") on October 17, 2007, asserting that she has been under a "disability" since January 12, 2007.[3] PageID 171-73, 174-85.  Plaintiff claims she is disabled due to depression, back problems, carpel tunnel syndrome and tendonitis.  PageID 201.

Following initial administrative denials of her application, Plaintiff received a hearing before ALJ Amelia Lombardo in June 2010.  PageID 84-114.  On September 9, 2010, ALJ Lombardo issued a written decision, concluding -- at Step Five of the five-step sequential disability analysis, *see infra* -- that Plaintiff was not disabled.  PageID 64-76.  Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2012;

2.  The claimant has not engaged in substantial gainful activity since January 12, 2007, the alleged onset date (20 CFR §§ 404.1571 *et seq.*);

3.  The claimant had the following severe impairments: anxiety and depression (20 CFR § 404.1520(c));

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526);

5.  After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity ["RFC"] to perform full range of work at all exertional levels but with the following non-exertional limitations: unskilled and low stress, defined as no assembly-line production quotas and not fast-paced;

---

[3]Shortly after filing, Plaintiff was found ineligible to receive SSI based upon her income. *See* PageID 134-41.  Accordingly, this appeal only involves the denial of her DIB application.

-2-

6.     The claimant is unable to perform any past relevant work (20 CFR § 404.1565);

7.     The claimant was born [in] 1956 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR § 404.1563);

8.     The claimant has a limited education and is able to communicate in English (20 CFR § 404.1564);

9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR § 404.1568);

10.     Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR § 404.1569 and 404.1569(a)); [and]

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 12, 2007, through the date of this decision (20 CFR § 404.1520(g)).

PageID 67-76.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 53-56. *See Casey v. Sec'y of H.H.S.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal on July 2, 2012. Doc. 2.

### B. Plaintiff's Hearing Testimony

At the administrative hearing, Plaintiff testified before the ALJ that she lives with her husband. PageID 87. She has a driver's license, and drives occasionally. *Id.* Plaintiff previously worked as a factory press operator for 18 years, but stopped working in 2006 because she could not perform the physical demands of the job. PageID 88.

Plaintiff testified that she has experienced depression since the early 1990s. PageID 94. She started therapy approximately one year prior to the hearing, and is seen regularly by a

mental health professional.  *Id.*  PageID 96.  She has difficulty concentrating and sleeping.
PageID 97.  Because of her inability to concentrate, she was forced to give up crossword puzzles
as a hobby, and struggles to maintain focus whenever she tries to read.  PageID 97-98.

Although the ALJ focused on Plaintiff's depression and anxiety, *see supra* ALJ Finding
3, Plaintiff also suffers from back pain, and she so testified before the ALJ.  Plaintiff testified
that her back problems stem from a 1995 motor vehicle accident.  PageID 88.  She claims to
experience back and neck pain daily, and has difficulty standing for long periods of time.
PageID 89.  Plaintiff testified that her prescribed pain medication "helps," but nevertheless
makes her feel "a little groggy" and inhibits her ability to drive.  PageID 90, 100.

Plaintiff estimates that she can lift 10-15 pounds.  PageID 94.  She is able to walk her
dogs around the block.  PageID 91.  She is able to stand for "a little bit" to cook, iron, do
laundry, and wash dishes.  PageID 91-92, 94, 99.

### C.  Vocational Expert Testimony

Vocational Expert ("VE") Eric Pruitt also testified at the administrative hearing.  PageID
104-09.  The VE classified Plaintiff's past relevant work as a plastic injection mold machine
operator at the light, unskilled level.  PageID 105.  Based on Plaintiff's age, education, work
experience, and also upon the RFC proposed by the ALJ, the VE testified that there are 29,000
medium exertional jobs and 31,000 light exertional jobs in the regional economy which Plaintiff
can perform.  PageID 106.

## II.  APPLICABLE LAW

### A.  Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's
non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed

the correct legal criteria. 42 U.S.C. §§ 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found the claimant disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the

ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. OPINION AND ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in the parties' briefs and the administrative decision, *see* doc. 9 at PageID 738-45; doc. 12 at PageID 779-87; PageID 67-72, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, Plaintiff argues that the ALJ erred by: (1) failing to find her mental impairments to be disabling; and (2) not finding any of her alleged physical conditions to be "severe impairments" at Step Two. Doc. 9 at PageID 746-54.

### A.  Plaintiff's Mental Impairments

Whereas the ALJ found Plaintiff's anxiety and depression to be "severe impairments," she nevertheless found them to be adequately accommodated by RFC limitations to unskilled and low stress work.  PageID 69-71.  Plaintiff argues that her mental impairments are disabling, and the ALJ's weighing of the medical evidence fails to properly account for the opinions of three psychologists:   Allen Boerger, Ph.D.; Stephen Halmi, Psy.D.; and Dick Genardi, Ph.D. Doc. 9 at PageID 746-52.  Dr. Boerger and Dr. Halmi each saw Plaintiff once; Dr. Genardi, on the other hand, examined Plaintiff and then treated her over time.  *Id.*

### i.

Dr. Boerger conducted a consultative exam on behalf of the state agency in March 2008. PageID 402-07.  He noted that Plaintiff had not previously sought mental health treatment, but she reported experiencing depression for "a very long time."  PageID 402-04.  Dr. Boerger found Plaintiff "display[s] symptoms of a mood disorder which [are] best described as a bipolar disorder."  PageID 406.  He diagnosed Plaintiff with bipolar I disorder (most recent episode depressed) and moderate anxiety disorder.  *Id.*  He assigned a Global Assessment of Functioning ("GAF") score of 49.[4]  *Id.*  Dr. Boerger opined that Plaintiff's ability to relate to others, including coworkers and supervisors, is "moderately" impaired; her ability to understand instructions is "moderately" impaired; and her ability to perform simple, repetitive tasks is "mildly" impaired. PageID 406-07.  However, Dr. Boerger opined that Plaintiff's ability to

---

[4]A GAF score of 49 (41-50, inclusively) indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals) OR any serious impairment in social, occupational, or school functioning (*e.g.* no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000) ("DSM-IV").

withstand the stress and pressures associated with day-to-day work activity is markedly impaired as a result of her bipolar disorder and anxiety.[5]  *Id*.

Dr. Halmi conducted a one-time exam of Plaintiff on July 27, 2009.  PageID 705-10.  During the exam, Plaintiff reported that she developed depression as a result of her back problems, and has been depressed for years.  PageID 708.  Plaintiff also reported that she suffers from a depressed mood, lack of interest, fatigue, concentration problems, indecisiveness, irritability and mood swings.  PageID 708.  Dr. Halmi administered the Minnesota Multiphasic Personality Inventory-II ("MMPI-II") to assess Plaintiff for psychopathology.  PageID 709-10.  Dr. Halmi concluded that, based upon the test results, "[p]eople with similar code types are experiencing a great deal of emotional turmoil and they tend to live rather schizoid lifestyles."  PageID 709.  He also concluded, "[s]imilar people lack basic social skills and are shy and socially isolated," and "[Plaintiff's] MMPI-2 profile is consistent with her self-report indicating severe depression."  *Id*.  Dr. Halmi diagnosed Plaintiff with major depressive disorder (recurrent episode and severe without psychotic features) and dysthymic disorder.  He also assigned Plaintiff a GAF score of 50.[6]  PageID 710.

On February 10, 2010, Dr. Genardi reported that Plaintiff had been receiving monthly treatment from his group's psychological practice following Dr. Halmi's consultative exam.  PageID 713-15.  Dr. Genardi noted Plaintiff's flat and constricted affect, as well as her disphoric mood.  PageID 714.  He also opined, "[Plaintiff] denies social anxiety, but clearly evidences social avoidance," and her "[s]ustained concentration and mental energy are compromised by pain and her medications."  *Id*.  Dr. Genardi diagnosed Plaintiff with major depressive disorder

---

[5]Whereas "moderate" functional limitations are "non-disabling, *see Sims v. Comm'r of Soc. Sec.*, 406 F.App'x 977, 980 (6th Cir. 2011), "marked" and "extreme" limitations are suggestive of disability.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(C) *et seq*.

(recurrent, severe non-psychotic), and assigned a GAF score of 35.[7]  PageID 715.  He also found

that Plaintiff suffers from chronic pain disorder, and opined that -- in addition to her mental

impairments -- she is unable to work due to pain and the effects of her medication.  *Id*.  He

concluded:

> [Plaintiff] is unable to meet the normal expectations of a regular workplace environment.  She cannot dependably guarantee attendance.  Her mood is variable [and] at times irritable.  She is socially avoidant.  Her communications are at times vague and unclear.  Her daily medication regimen is comprised of substances that would present a danger to any worksite because of expectable compromises in diligence and attention.  It is unlikely that she could maintain performance in any particular workday for the length of time needed[.]  [N]or would she be able to recover from high levels of exertion to report to work on the following day.

*Id*.

In July 2010, Dr. Genardi completed interrogatories and issued a medical assessment in

which he opined that Plaintiff has poor or no ability to:  follow work rules; deal with the public;

interact with supervisors; deal with work stress; function independently; and maintain

attention/concentration.  PageID 716. He found Plaintiff has a poor ability to understand,

remember, and carry out complex job instructions, and demonstrate reliability.  PageID 717-18.

He further opined that she is unable to: be prompt and regular in attendance; respond

appropriately to supervision, co-workers, and customary work pressures; withstand the pressure

of meeting normal standards of work productivity and work accuracy without significant risk of

physical or psychological decompensation or worsening of her physical and mental impairments;

sustain attention and concentration on her work to meet normal standards of work productivity

and work accuracy; understand, remember, and carry out simple work instructions; behave in an

---

[6]*See supra* note 4.

[7]A GAF of 35 (31-40, inclusively) reflects "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  DSM-IV at 32.

emotionally stable manner; relate predictably in social situations; demonstrate reliability; maintain concentration and attention for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; complete a normal workday or work week without interruption from psychologically and/or physically based symptoms and perform at a consistent pace without unreasonable numbers and length of rest periods; get along with co-workers or peers without undulling distracting them or exhibiting behavior extremes; and sustain ordinary routine without special supervision. PageID 722-26.  Dr. Genardi concluded that Plaintiff has a "moderate" restriction of her daily activities; a marked restriction in her social functioning; and "marked" to "extreme" deficiencies of concentration, persistence and pace resulting in a failure to complete tasks within a timely manner.[8]  PageID 727-28.

### ii.

An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).   If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors -- namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source -- in determining what weight to give the opinion.  *Id*.  Moreover, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the

---

[8]*See supra* note 5.

evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)).

Here, the ALJ, by her own admission, accorded "very little weight" to the opinions of Drs. Boerger and Genardi. PageID 71-72. Notably, the ALJ reasoned that Dr. Boerger relied too heavily upon Plaintiff's subjective complaints and, as a result, disregarded his opinion that Plaintiff is markedly impaired in her ability to withstand the stress and pressure of performing day-to-day work. *Id*. The ALJ rejected Dr. Genardi's opinion for the same reason. *Id*. Furthermore, the ALJ concluded that Dr. Genardi's February 2010 opinion was issued before he became Plaintiff's treating psychologist, and as such was not entitled to deferential or controlling weight. PageID 71. However, the ALJ did not address Dr. Genardi's July 2010 opinion, or examine it in conjunction with the treating source rule -- even though the record demonstrates Dr. Genardi had been regularly treating Plaintiff by the time he submitted interrogatories and a mental RFC assessment in July 2010. PageID 71-74, 94, 716-28. The ALJ's opinion in this regard is deficient. *Wilson*, 378 F.3d at 546. Moreover, the ALJ provided no analysis whatsoever of Dr. Halmi's opinion.

Essentially, Plaintiff's first assignment of error is an argument that the ALJ erred at Step Five of the sequential evaluation recited above -- *i.e.*, finding there is work available in the national economy which she can perform. *See* doc. 9. At the Fifth Step, the Commissioner has the burden of showing the claimant has "the vocational qualifications to perform specific jobs." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002). The Commissioner's Step Five determination must be supported by substantial evidence. *Id.* "This kind of substantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in

response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.* (internal quotations omitted).  Here, the Court finds that substantial evidence does not support the ALJ's Step Five finding because the RFC posed to the VE does not accurately portray Plaintiff's mental impairments.

In weighing the medical evidence, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, No. 08-3651, 2009 U.S. App. LEXIS 19206, at *36-37 (6th Cir. Aug. 27, 2009).[9]  By summarily disregarding the opinions of Drs. Genardi, Halmi, and Boerger -- and thereby basing her findings upon *no* medical opinion of record -- the ALJ improperly substituted her lay opinion for that of a Medical Expert who would be qualified to make such a medical determination.  *Id.*  Moreover, the ALJ failed to set forth a sufficient basis for disregarding the opinions of the aforementioned three psychologists.

The ALJ was also misguided in dismissing the opinions of Drs. Genardi and Boerger on the grounds that they were based on Plaintiff's own report of functioning.  As the Sixth Circuit has recognized, mental impairments differ from physical impairments:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment . . . consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. . . . In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of medical illness. . . . When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and

_____

[9]The Court recognizes there are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source.  *See, e.g., Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment").  This, however, is not such a case.

> observations of professionals trained in the field of psychopathology.  The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship*, 874 F.2d at 1121 (internal quotation marks and citation omitted).  As recounted above, the opinions of Drs. Genardi, Boerger, and Halmi are all consistent in finding Plaintiff's mental impairments to be significantly more restrictive than the RFC determined by the ALJ.  *See* PageID 402-07, 705-10, 713-28.

The ALJ thus erred by favoring her own lay interpretation of the medical evidence, and formulating an RFC based on that interpretation, as well as a selective incorporation of the portions of the medical opinions which supported a non-disability finding.  *See Howard*, 276 F.3d at 240-41 (finding the ALJ's decision was not supported by substantial evidence, as the RFC included only the portions of a medical source's report which suggested the claimant was capable of working, and did not accurately describe the claimant's abilities).  *See also Mabra v. Comm'r of Soc. Sec.*, No. 2:11-cv-00407, 2012 U.S. Dist. LEXIS 84504, at *25-34, 2012 WL 2319245, at *8-10 (S.D. Ohio June 19, 2012); *Stallworth v. Astrue*, No. 3:08-cv-36, 2009 U.S. Dist. LEXIS 131119, at *23-24, 2009 WL 335317, at *9 (S.D. Ohio Jan. 23, 2009).  Furthermore, by providing no analysis of Dr. Genardi's July 2010 opinion in light of the treating source rule -- or any discussion of Dr. Halmi's opinion -- the ALJ has, in turn, deprived the Court of the ability to conduct a meaningful review of her decision.  Accordingly, the Court finds the ALJ's analysis in this regard unsupported by substantial evidence, and recommends that the case be remanded for additional proceedings.[10]

---

[10]Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the

## B. Plaintiff's Physical Impairment

The Court has thoroughly examined and considered Plaintiff's second assignment of error, but finds it to be unpersuasive.  No reversible error is committed at Step Two where the ALJ determines the claimant has at least one other severe impairment, and then considers all of the claimant's other alleged impairments in the subsequent steps of the disability evaluation.  *See Maziarz v. Sec'y of H.H.S.,* 837 F.2d 240, 244 (6th Cir. 1987).   Here, the ALJ found that Plaintiff had a severe mental impairment at Step Two, and proceeded to consider *all* of her impairments -- including her alleged physical impairments found not to be severe -- in the subsequent steps of the disability analysis.[11]  As such, no reversible error was committed.  *Id.*

Rather, as discussed above, the basis for reversal in this case is the ALJ's improper substitution of her own interpretation in place of the opinions of the treating and consulting psychologists.   Accordingly,   the   case   should   be   remanded   for   further   analysis   and reconsideration.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds that the ALJ's decision is unsupported by substantial evidence, and recommends that it be reversed and remanded to the Commissioner of

---

combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Here, a judicial award of benefits is unwarranted because the record does not show either that "proof of disability is overwhelming" or that "proof of disability is strong and evidence to the contrary is lacking." *Id.*

[11]Notably, the objective medical evidence of record indicates that Plaintiff's neck and back pain are "well controlled" by medication. *See*, *e.g.*, PageID 576, 608.  MRIs and x-rays were unremarkable, and showed no disc herniation, degenerative disc disease, and normal imaging of her hips, lumbar and cervical spine.  PageID 262, 438, 457.  Through at least November 2007, Plaintiff was capable of exercising three times per week by walking up to two miles.  PageID 258, 315.

Social Security under the Fourth Sentence of 42 U.S.C. § 405(g).  *See Faucher,* 17 F.3d at 173-76.

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be found unsupported by substantial evidence and **REVERSED**, and this matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

2.      This case be **CLOSED**.

May 21, 2013                                    **s/Michael J.  Newman**
                                                United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).